### JOSEPH B. BURLEIGH
*vs.*
### SOCONY-VACUUM OIL COMPANY, INC.

Superior Court     New Haven County     File No. 56681

MEMORANDUM FILED DECEMBER 14, 1939.

*William H. Burland,* of New Haven, for the Plaintiff.

*FitzGerald, Foote & FitzGerald,* of New Haven, for the Defendant.

McEVOY, J. This is an action brought to recover for injuries alleged to have been sustained by the plaintiff because the defendant is alleged to have been negligent in creating an open excavation adjoining a public walk and because the defendant "caused and permitted the building....to be wrecked and torn out, and in the course of said wrecking and tearing down it caused and permitted a large, deep opening or excavation to be made and created on the premises abutting the public sidewalk running in front of said premises, and did carelessly and negligently on the night of February 8, A.D. 1939, and in the early morning hours of February 9, 1939, in the night and dark season, left said opening and excavation unguarded and unlighted."

The land upon which the building stood was conveyed to the defendant by deed dated January 10, 1939, recorded January 11, 1939.

In a mutual written instrument made and dated on the same day, and as part of the same transaction, the grantor, William P. Hessler, agreed, *inter alia,* with the defendant: "....that I shall raze and remove at my own expense but with no obligation to fill excavations, said entire garage building within one month from the date hereof, and that I may go upon said premises for that purpose, and I agree to hold said Socony-Vacuum Oil Company harmless from all claims for damage to person or property by virtue of such removal until the completion thereof, and if I fail to do so Socony-Vacuum Oil Company, Inc. may and is hereby authorized and empowered to raze said entire garage building, making such entry on my other land for that purpose as may be reasonable and necessary in the opinion of Socony-Vacuum Oil Company, Inc., and further, in the event of my failure to raze said building and in the event of the consequent razing of said building by Socony-Vacuum Oil Company, Inc. hereunder, said Socony-Vacuum Oil Company, Inc.

shall be entitled to all the material of which said garage building is constructed and any personal property remaining therein."

Thereafter, on January 28, 1939, defendant's grantor, William Hessler, by written instrument sold the garage building on the conveyed premises to Merberg Wrecking Corporation for $50.

In that agreement the Merberg Wrecking Corporation agreed to remove the building "to the ground level, but that the concrete floor is to remain intact."

That agreement also contained the following paragraphs:

"The contractor agrees that the consummation of this agreement is for the purpose of demolishing the above mentioned building; that said building is to be removed to the ground level, but that the concrete floor is to remain intact.

"The contractor agrees that he will furnish certificates of Compensation and Public Liability Insurances before commencing operations, as well as secure all permits necessary."

On January 27, 1939, the grantor of the defendant, William Hessler, as owner, made "Application to demolish the building." In that application the contractor named was the Merberg Wrecking Corporation. A few days later the Merberg Wrecking Corporation began to demolish the building in accordance with its contract with the defendant's grantor, William Hessler.

By February 8, 1939, all of the front of the building had been demolished, leaving only a cement block pillar at one end and part of a cement block wall and a pillar at the other end, fronting the sidewalk.

The double row of floor joists also remained. The greater portion of the floor had been removed from the joists leaving a hole between the joists on one side of the floor about six feet long and 34 inches wide and about six feet above the cellar floor of the building.

The defendant gave no directions and exercised no control over or as to the demolition of the building and this was managed and controlled entirely by the Merberg Wrecking Corporation.

The demolition operation was in charge of an experienced foreman who was employed by the Merberg Wrecking Corporation.

This foreman left the locus at about 4:30 p.m. on February 8, 1939. Before leaving, he caused to be erected a barrier fence across the front of the site of the building and this fence was made of a series of two by four vertical posts, to which were nailed a triple row of roof boards, each of which was three-fourths of an inch thick and six inches wide, at a height of about three feet over the adjoining public walk.

This barrier formed an adequate and reasonable protection to users of the sidewalk.

It was in its position, as erected, at least as late as 6:30 p.m. on February 8, 1939.

Shortly after 12 p.m. on February 8, 1939, and before 1 a.m. on February 9, 1939, the plaintiff and a companion left a nearby tavern and made their way along the sidewalk in front of the demolished building. While so walking the plain-tiff wished to "go to the toilet" and, as he says, "some way or another I turned around and dropped into the hole" and, on cross-examination, "I turned and fell—that's all I know."

The plaintiff further testified: "It was eleven to twenty-one minutes after leaving the tavern that I fell."

Before the plaintiff left the tavern, he knew that there was an available toilet there. At the time when the plaintiff fell his companion had walked a few steps ahead of the plaintiff and the companion did not see the plaintiff fall nor did he know how the plaintiff fell.

The plaintiff was found at the bottom of the open and un-covered portion of the floor, the opening of which has been described as 34 inches wide and six feet long.

The nearest edge of this hole to the public sidewalk was 16 to 18 inches from the edge of the walk.

Adjoining the walk, and between the walk and the edge of the hole and across the front of the building lay a cement cop-ing about six inches high and eight inches wide. Between two parts of this coping was a cement step, which was about six inches high and about 12 inches wide, and this step protruded slightly toward the walk beyond its companion coping.

At 6:30 o'clock in the afternoon of February 8th, there were several cement blocks on top of the coping.

Between 7 and 8 a.m. on February 9th the cement

blocks which had been on the coping and the barrier were no longer across the front of the building. One of the two by four pieces, with a few nails protruding, was still standing.

The night of February 8th and the morning of February 9th were clear. Prior to February 8th there had been a fall of snow and some of this snow and some ice were in the neighborhood and some snow and ice were in the building, as appears by the photographic exhibits.

Diagonally opposite the locus there was an ordinary arc street light which cast its rays about 125 feet.

There was no other light, lantern or "flare" in front of the place where the plaintiff fell.

Neither the plaintiff, nor his companion, knew how the plaintiff happened to go into the excavation. If the plaintiff had made ordinary or, in fact, any use of his senses he could and would have seen that the building was in the process of demolition.

The only witnesses present when the plaintiff fell were the plaintiff and his companion. Their detailed recitation of all other essentials of the surrounding circumstances was in marked contrast with their entire absence of any observations as to the manner in which the plaintiff fell. This marked contrast in the various parts of their testimony furnishes a basis for a fair inference that neither of these witnesses was wholly frank in his testimony as to his recollection.

After the answer to the complaint was filed the defendant moved to cite in the Merberg Wrecking Corporation as a party defendant. On September 20, 1939, the defendant's motion to cite in the Merberg Wrecking Corporation as a party defendant was denied.

The plaintiff elected to go to trial upon his claimed cause of action against the Socony-Vacuum Oil Company and not to join the Merberg Wrecking Corporation or the former owner, William Hessler, as a party or parties defendant.

In his written claims of fact and law the plaintiff now suggests that there is ample evidence to justify an amendment of the pleadings so as to set out an allegation of the existence of a nuisance.

In this connection it should be observed that there is no al-

legation in the pleadings that the defendant had any notice or knowledge of the existing conditions before the injury to the plaintiff occurred.

Both the plaintiff and the defendant comment on the proximity of the excavation or hole to the traveled walk. The law would seem to be so that the hole or excavation was so close to the walk that it would be, under certain circumstances, negligence on the part of the party to be charged to permit such a hole to remain without some steps having been taken to reasonably guard it.

It is not alleged nor does it appear that the defendant had any notice or knowledge of the existing condition—much less any notice or knowledge for such a length of time as would have put a person in the exercise of reasonable care upon implied, as distinguished from actual, notice.

Under all of the evidence it does not appear that the situation, then existing, constituted a nuisance.

It seems to be claimed on behalf of the plaintiff, that negligence of the defendant arose from its failure to see to it that the barrier which was erected not later than 4:30 p.m. on February 8th and was, undisputedly, in place not later than 6:30 on the evening of February 8th was continued in its place, as erected.

The defendant had nothing to do with and exercised no control over the demolition of the building.

The Merberg Wrecking Corporation, which actually engaged in the demolition, exercised reasonable care in the removal of the building and in the protection of users of the adjoining public walk. The barrier erected was a sufficient and reasonable one.

To hold that even the non-litigant remover, the Merberg Wrecking Corporation, was negligent because it did not post a guard to see to it that the sufficient barrier was not interfered with or taken away by some volunteer would require it to use a much higher degree of care than reasonable care and would, practically, make it an insurer.

Passing over for the moment the theory that the plaintiff may have been a trespasser and the consideration of the care which he would be entitled to expect under those circumstances, it nevertheless appears that there was no negligence on

the part of anyone and that the mere disappearance of the sufficient barrier, through no fault of the Merberg Wrecking Corporation, much less of the defendant, does not constitute negligence.

Upon the pleadings and all of the evidence the issues are found in favor of the defendant and judgment may be entered, accordingly, for it to recover its costs.